**CONSOLIDATED BOTTLING CO.,**
Appellant,

v.

**JACO EQUIPMENT CORP., Appellee,**

v.

**UNITED STATES FIDELITY & GUARANTY CO., Third-Party Defendant.**

**No. 317, Docket 35272.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1970.

Decided April 5, 1971.

David C. Fielding, Buffalo, N. Y. (Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y., Milton H. Friedman, Buffalo, N. Y., on the brief), for appellant.

Ronald B. Felman, Buffalo, N. Y. (Kavinoky, Cook, Hepp, Sandler & Gardner, Buffalo, N. Y., on the brief), for appellee.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., Hugh McM. Russ, Jr. and Stephen Kellogg, Buffalo, N. Y., of counsel, for third party defendant.

Before MOORE, KAUFMAN and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff-seller Consolidated Bottling Co. (Consolidated) appeals from the dismissal with prejudice of its complaint against Jaco Equipment Corp. (Jaco), the defendant and alleged purchaser whereby Consolidated seeks to recover from Jaco the purchase price of $11,500 for certain used can filling equipment which was seriously damaged before delivery was made. Jurisdiction is founded on diversity of citizenship. The dispositive question presented for review is whether under the New York Uniform Commercial Code (hereinafter referred to as "N. Y. U. C. C." or the "Code") the risk of loss passed to the purchaser Jaco under a contract containing the term "f.o.b. purchaser's truck." We affirm.

### THE FACTS

Consolidated is in the bottling business; Jaco is in the used machinery business. In the latter part of April 1965, James Lovelace, a salesman of Jaco, together with a Jaco customer, inspected the used can filler in question, which was stored by Consolidated in a Philadelphia warehouse. Shortly after the inspection, Jaco sent a purchase order to Consolidated, dated May 3, 1965, describing the equipment with particularity and stating "sold as per our customer's inspection with Jim Lovelace, f. o.b. purchaser's truck—[$]11,500.00." The purchase order also provided: "[t]o be paid in full at time of shipment which probably will be within the next two-three weeks maximum" with "[s]hipping instructions to follow." The purchase order requested Consolidated to "please send invoice in duplicate." On May 11, 1965, Consolidated confirmed the purchase order by sending an invoice to Jaco which restated the terms of the purchase order, including delivery to be "f.o.b. purchaser's truck," but excluded the phrase, "which probably will be within the next two-three weeks maximum."

Nothing further took place between the parties concerning the delivery of the machine until June 8, 1965. On that date, Jack Levin of Consolidated called Maurice Osterman, President of Jaco, inquiring about the delivery of the machine. Levin explained that Consolidated needed at least two weeks' advance notice of shipment. He said that, if delivery could not be completed in two weeks time, Consolidated would prefer to have delivery made after the Fourth of July holiday. On June 9, 1965, Osterman sent a letter to Consolidated confirming the previous day's telephonic conversation, reading in pertinent part as follows:

> "We are reminding them [Jaco's customer] again, that you will have to have at least two weeks notice, in order that you can send some men down to do the loading of the can filler—and if they take too long, you would rather then, wait until after the Fourth of July."

On the evening of June 9, 1965, the warehouse in which the can filler was stored was broken into by vandals. An inspection revealed that the essential

parts of the machine had been removed. Because these parts could be replaced only at great expense, Jaco refused to accept the machine in its unworkable condition.

In light of this refusal, Consolidated filed suit, asserting that the "risk of loss" had passed to Jaco by May 24, 1965, three weeks after the date of the purchase order. Jaco defended by asserting that the contract provided no definite date for delivery, that a reasonable time had not yet elapsed, and that, therefore, the risk of loss remained with the seller, Consolidated, since there had been no delivery or tender thereof. Jaco also counterclaimed for $3,000 damages suffered as a result of its lost profits and impleaded its insurance carrier, United States Fidelity & Guaranty Co. (U. S. F. & G.). Consolidated moved for summary judgment; Jaco cross-moved for summary judgment and, in the alternative, for relief against the third-party defendant U. S. F. & G., should Consolidated's motion be granted. Judge Henderson, who heard the motions, denied them all, finding that there was "a sufficient issue of fact on the matter of tender to preclude a grant of summary judgment."

Upon the trial on the merits, Judge Curtin dismissed Consolidated's complaint and entered judgment in favor of Jaco. Jaco's third-party action against U. S. F. & G. was also dismissed, without costs to either party. Jaco was awarded costs against Consolidated. Consolidated appeals from that judgment.

### THE LAW

Consolidated's theory of the case is that it "put and held the can filler at the disposition of Jaco within the meaning of § 2–503(1) of the Uniform Commercial Code." Accepting this allegation that Consolidated did all that it could do to put the can filler in a "deliverable state," and further assuming *arguendo* that Consolidated gave Jaco the required notification "reasonably necessary to enable [the buyer] to take delivery," under the same section, we still find Consolidated's position untenable because it ignores an integral part of the parties' agreement—i. e., the term "f. o. b. purchaser's truck."

Consolidated makes extensive reference to pre-Code commercial statutory and common law to show that "the specific goods" were in a "deliverable state," and that, therefore, this state of affairs (plus notice) constituted adequate "tender" within the meaning of N. Y.U.C.C. §§ 2–509(3) and 2–503(1) (McKinney 1964). The district court expressly found to the contrary. We note incidentally that Consolidated's position on this basis is to no avail because under Rule 5 of § 19 of the old Uniform Sales Act, N.Y.Pers.Prop. Law § 100, at 264 (McKinney 1962),

> "[i]f the contract to sell requires the seller to deliver the goods to the buyer or at a particular place * * * the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." [1]

Employment of the f. o. b. term in the contract (*i.e.,* in both the purchase order and the acknowledging invoice) obviates the necessity of deciding whether there was "tender of delivery" within the meaning of § 2–509(3), because § 2–509(4) provides that "[t]he provisions of this section are subject to contrary agreement of the parties * *." N.Y.U.C.C. § 2–509(4), at 440 (McKinney 1964). We hold that the term "f.o.b. purchaser's truck" is such a "contrary agreement" under § 2–509(4), bringing into force application of N.Y. U.C.C. § 2–319(1)(c) (McKinney 1964).

1. The New York Annotations to N.Y.U. C.C. § 2–319 (McKinney 1964) which greatly clarifies the meaning and legal effect of the term "f. o. b.," not defined by the predecessor Uniform Sales Act, note that "[b]y placing the risk on the seller until the F.O.B. point, the Code calls for results comparable to those reached under Personal Property Law §§ 100 (Rules 4 and 5), 103, and 127 * * *" As will be seen *infra*, § 2–319 (1) (c) governs the outcome of this case.

See R. Dusenberg & L. King, Sales and Bulk Transfers Under the UCC § 8.03, at 8–35 (1966).

Section 2–319(1)(c) of the Code provides that under a contract containing a term such as the one at bar, "the seller must * * * at his own expense and risk load the goods on board." N.Y.U. C.C. § 2–319(1) (c), at 327 (McKinney 1964). The New York Annotations to this section note that "[a]ny question as to when the risk passes to the buyer can be avoided by the use of the appropriate F.O.B. term." N.Y.U.C.C. § 2–319, at 328, 329 (McKinney 1964). This was clearly done here, and the judgment must, therefore, be affirmed.